IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT LANCE WALLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-1398-N |
| | § | |
| BRYAN D. PROCTOR, II, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

This Order addresses Defendants Bryan D. Proctor, II, Shane Wickson, Brandon Arriola, Robert Thompson, Robert Duddington, Kent Glover, Terry D. Powell, and the City of Cleburne, Texas's motion to dismiss, or in the alternative, for summary judgment [39-2]. The Court grants the motion.  Specifically, it dismisses: (1) all of Waller's claims against Wickson, Arriola, and Duddington without prejudice; (2) dismisses Waller's individual capacity claims against Glover, and Powell; (3) dismisses Waller's individual capacity claims against Thompson; (4) dismisses Waller's unlawful search claim against all defendants; (5) dismisses Waller's official capacity claims against all of the individual defendants; (6) dismisses Waller's state law claims against all of the individual defendants; and (7) dismisses Waller's state law claims against the City of Cleburne because sovereign immunity shields it from suit.   In addition, the Court grants summary judgment that (1) qualified immunity shields Proctor from Waller's section 1983 claims; and (2) Waller's section 1983 claims

ORDER – PAGE 1

against the City fail because he cannot demonstrate an underlying constitutional violation.

## I. ORIGINS OF WALLER'S CLAIMS

On June 10, 2007, at approximately 10:00 p.m., Plaintiff Robert Waller's wife approached Proctor, a police officer with the City of Cleburne, at a gas station. She indicated that her husband was "highly intoxicated" and driving around the city. She informed Proctor that she and her husband were involved in a verbal disturbance earlier in the day and that she feared he would "come home drunk and cause another disturbance." Am. Compl. at 5. Further, she advised Proctor that she believed that Waller was at a local restaurant.

Proctor proceeded to the local restaurant. Shortly thereafter, Waller entered his car and drove out of the restaurant parking lot. According to Proctor, Waller failed to use a turn signal when he exited the lot. Proctor immediately initiated a traffic stop. Proctor called in Waller's license plate number to the police dispatcher, who informed Proctor that Waller had a "caution to peace officer" warning on his driver's license. Proctor claims that Waller took an unusually long time to stop his vehicle and that, when he approached the car, he noticed the odor of alcohol on Waller's breath.

Proctor administered field sobriety tests. Although Waller attempted to cooperate with Proctor's requests, he could not meet the requirements of the sobriety tests. *See* Ex. A to Pl.'s Mot. to Dismiss (in-car video recording) at 8:30-17:15. Waller explained to Proctor that he was "covered" in poison ivy, that he was taking medication to treat the problem, and that he had knee and ankle problems. He admitted that he had consumed alcohol and indicated that he had equilibrium problems. *See id*. at approximately 12:00. Waller also

stated, "you don't understand this stuff that I'm on" as he was taking the tests.  *Id.* at approximately 12:35.  Proctor concluded that Waller was too intoxicated to safely operate a motor vehicle and arrested him for "driving while intoxicated" ("DWI").  According to Proctor, officers searched Waller's vehicle incident to arrest and found two pills later identified as hydrocodone and a cooler containing beer in the passenger floorboard.

After his arrest, Waller asked Proctor to take him to the hospital for a blood draw. Proctor retrieved a blood sample kit from the Cleburne Police Department and drove Waller to the hospital.  At the hospital, Proctor claims that Waller demanded that his own doctor perform the blood draw and that his attorney be present during the draw.  Proctor denied this request and instructed Waller, still handcuffed, to sit in a chair in a waiting area.

This is where the parties' stories sharply diverge.  According to Waller, he took a seat, but had difficulty being still while he was waiting for the blood draw.  He claims that he moved around in his seat in an attempt to relieve discomfort caused by his poison ivy condition.  At one point, Waller stood up from the chair "to lean against a door frame in an attempt to scratch his back."  Am. Compl. at 7.  According to Proctor, on the other hand, Waller became verbally aggressive, began to curse, and refused to sit down in the hospital waiting room.  Proctor claims that he advised Waller to sit down numerous times and stated that, if Waller refused, he would force Waller to sit.  According to Proctor, Waller indicated that he "was not going to comply and there was nothing [Proctor] could do about it."  Defs.' App. at 13-14.  According to Proctor, Waller then advanced towards him in what he perceived to be a threatening manner.

Proctor pushed Waller backwards into a chair. According to Proctor, he did so "in light of the threatening approach, the caution to peace officer warning on Plaintiff's license, [his] fear for the safety of himself and others, [Waller's] refusal to obey instructions, and the need to control and detain [Waller]." Defs.' App. at 43. Waller claims that the force was excessive, caused him severe pain, and "resulted in extensive injuries to [Waller's] back including but not limited to two (2) herniated discs requiring surgical intervention." Am. Compl. at 7.

After the incident, Proctor drove Waller back to the police station to retrieve a blood search warrant packet. At the station, Waller complained of back pain and requested medical attention. Proctor called for emergency services. Shortly thereafter, Waller returned to the hospital by ambulance for evaluation and treatment. Proctor followed behind. At the hospital, Proctor completed a blood search warrant affidavit and obtained a blood draw.[1] Shortly thereafter, the hospital released Waller, advising him to take over-the-counter pain medication (ibuprofen and acetaminophen) for his back pain and to consult his general physician in one to two days. Def.'s App. at 37-39. Proctor then brought Waller to the

---

[1] The parties dispute the doctor's statement regarding the results of the test. According to Proctor, the treating physician indicated that Waller's blood alcohol concentration ("BAC") was 0.180, to which Waller responded "you may have me on the DWI, but I will have your ass on police brutality." Defs.' App. at 14. Waller, however, claims that the doctor said that his BAC was 0.018. He alleges that the physician reiterated the results to Proctor, but Proctor refused to change his position and "falsely stated in his report that Plaintiff's blood alcohol concentration was [0.180]." Am. Compl. at 8. Further testing of Waller's blood sample indicated a BAC of .02 and .85 milligrams per liter of Alprazolam, a generic for the drug Xanax used to treat anxiety attacks.

Johnson County jail on charges for possession of dangerous drugs, resisting arrest, and elevated DWI, due to Waller's two prior DWI charges.

Waller alleges that Proctor harassed him after the arrest. Specifically, Waller claims that during the months of June, July, and August 2007, Proctor cruised around his residence in a patrol car, watched, and followed him. Then, at about 2:30 a.m. on August 14, 2007, Waller alleges that he woke up to the sound of Proctor knocking on his door. He claims that Proctor conducted a warrantless search of his residence without his consent.

In addition, Waller claims that Proctor acted under the supervision and training of Defendants Glover and Powell at all times. He further alleges that all of the individual defendants acted under the color of laws and regulations of Texas and the City of Cleburne. According to Waller, the City of Cleburne's police department tolerates police misconduct and, even further, encourages misconduct by failing adequately to supervise, train or discipline its officers. Am. Compl. at 9.

Waller filed suit against the City of Cleburne and the individual defendants one day short of the statute of limitations. Based on the incidents surrounding his June 10, 2007 arrest, he asserted claims under 42 U.S.C. § 1983 ("section 1983") for unreasonable seizure of his person, unreasonable force, and denial of medical care. *See* Compl. at 6-10 [1]. In addition, he brought state law negligence claims against the City and the individual defendants. *Id.* On December 7, 2009, Waller amended his complaint to include an unlawful search claim based on Proctor's August 14, 2007 search of his residence. *See* Am. Compl. at 10. Now, Defendants ask the Court to dismiss Waller's claims under Rule 12(b)(6) of the

Federal Rules of Civil Procedure or, in the alternative, grant summary judgment in their favor.  The Court considers each of Defendants' arguments below.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S.  at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citations omitted).  To avoid dismissal for failure to state a claim, a plaintiff  must plead specific facts, not mere conclusory allegations. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

As the Supreme Court recently observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice.  [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."  FED. RULE CIV. PROC. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

A party may raise a statute of limitations defense in a motion to dismiss for failure to state a claim.  *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007).  "Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears

clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)); *see also Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 774 (N.D. Tex. 2008).

### B. Summary Judgment Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, courts need not sift through the record in search of triable issues. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In doing so, the nonmovant may not rely on "naked assertions of an actual dispute" but instead "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *In re Lewisville Props.*,

*Inc.*, 849 F.2d 946, 950 (5th Cir. 1988) (citing *Anderson*, 477 U.S. at 255–56). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

For the reasons provided below, the Court grants Defendants' motion to dismiss on some claims and their motion for summary judgment on others. Specifically, the Court grants the Defendants' motion to dismiss where the Court confines its analysis to the face of the pleadings and summary judgment where it looks beyond the pleadings to the evidence in the record.[2]

### III. THE COURT DISMISSES SOME OF WALLER'S CLAIMS

#### A. The Court Dismisses Waller's Claims Against Defendants Wickson, Arriola, and Duddington Without Prejudice

Waller nonsuited all of his claims against Defendants Wickson, Arriola, and Duddington in his second amended complaint. *See* Am. Compl. at 13. Now, he asks the Court to dismiss those claims without prejudice. "[A]s a general rule, motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal

---

[2]The Court dismisses: (1) all of Waller's claims against Wickson, Arriola, and Duddington without prejudice; (2) dismisses Waller's individual capacity claims against Glover, and Powell; (3) dismisses Waller's individual capacity claims against Thompson; (4) dismisses Waller's unlawful search claim against all defendants; (5) dismisses Waller's official capacity claims against all of the individual defendants; (6) dismisses Waller's state law claims against all of the individual defendants; and (7) dismisses Waller's state law claims against the City of Cleburne because sovereign immunity shields it from suit. In addition, the Court grants summary judgment that (1) qualified immunity shields Proctor from Waller's section 1983 claims; and (2) Waller's section 1983 claims against the City fail because he cannot demonstrate an underlying constitutional violation.

prejudice other than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002) (citing *Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990)).[3]

Defendants present three arguments that dismissal without prejudice will cause them plain legal prejudice. First, they cite Waller's inability to respond to the Court's order requiring a Rule 7(a) reply. However, "[a] dismissal with prejudice is appropriate only if the failure to comply with the court order was the result of purposeful delay or contumaciousness and the record reflects that the district court employed lesser sanctions before dismissing the action." *Castillo v. Wright*, 57 F. App'x 211, 211 (5th Cir. 2003) (quoting *Long v. Simmons*, 77 F.3d 878, 879 (5th Cir. 1996)). Defendants present no evidence to show that Waller failed to file a Rule 7(a) reply with respect to Wickson, Arriola, and Duddington as a result of purposeful delay or contumaciousness.

Second, Defendants argue that the Court should dismiss Waller's claims with prejudice due to the applicable qualified immunity law. In other words, Defendants argue that their motion for summary judgment would succeed on the merits with respect to the three Defendants. However, the Defendants are free to raise these arguments again if Waller files a subsequent suit. Thus, they fail to demonstrate plain legal prejudice on this ground.

Finally, Defendants argue that "any new claims would be barred by the applicable statute of limitations." The Court recognizes that the loss of a statute of limitations defense

---

[3]Where dismissal without prejudice will cause plain legal prejudice, a court has two options: it can deny the motion or it can craft reasonable conditions that will eliminate the prejudice. *Id.* at 318.

causes a defendant plain legal prejudice.  *See Elbaor*, 279 F.3d at 318; *Phillips v. Illinois Cent. Gulf R.R.*, 874 F.2d 984, 985-86 (5th Cir. 1989).  Here, however, the Defendants do not claim that they will lose an existing limitations defense, but rather assert that the statute of limitations will bar Waller's claims in a subsequent suit.  Moreover, there is no indication on the record that Waller intends to file suit against the dismissed Defendants in another forum in order to avoid a time bar.

The Court holds that dismissal without prejudice will not cause Defendants to suffer plain legal prejudice.  Accordingly, the Court dismisses Defendants Wickston, Arriola, and Duddington without prejudice.

### B. Waller Fails to State A Claim Against Powell and Glover in Their Individual Capacities

In addition to his claims against Proctor, Waller seeks recovery against Defendants Powell and Glover, Proctor's supervisors, for failure to adequately train and supervise Proctor.  "Liability under Section 1983 for a supervisor may exist based either on '(1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987)).  Absent "overt personal participation" in the events that give rise to the alleged constitutional violations, a plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  *Id.* at 274 (quoting *Estate of Davis v. City of*

*N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)). Deliberate indifference is a "'conscious' choice to endanger constitutional rights." *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998)). In general, proof of deliberate indifference requires a showing of "more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Id.* (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).

Here, Waller alleges no overt personal participation by Glover and Powell. Therefore, he must plead sufficient facts to state a plausible claim that their allegedly wrongful conduct was causally connected to the alleged constitutional violations committed by Proctor. Waller fails to meet this burden. He offers no facts to support a plausible causal connection between Glover and Powell's supervision and training of Proctor and Proctor's behavior. Moreover, he fails to allege any facts to demonstrate deliberate indifference by Glover or Powell. Thus, Waller fails to state a plausible claim for relief against Glover and Powell.[4]

### C. Waller Fails to State A Claim Against Thompson in his Individual Capacity

Waller also seeks recovery against Thompson, a police officer with the City of Cleburne. However, Waller fails to allege any specific facts whatsoever to support his claims against Thompson. A viable complaint must include "enough fact[s] to raise a reasonable

---

[4]Further, as the Court discusses below, Waller fails to demonstrate a constitutional violation by Proctor. A supervisor cannot be liable under section 1983 where there is no underlying constitutional violation. *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425-26 (5th Cir. 2006).

ORDER – PAGE 12

expectation that discovery will reveal evidence of [the claim or element]." *Twombly*, 550 U.S. at 570.  Waller fails to do so and, therefore, he does not state a plausible claim for relief against Thompson.

### D. The Statute of Limitations Bars
### Waller's Unlawful Search Claim

Waller amended his complaint on December 7, 2009 to include an unlawful search claim under section 1983 based on an alleged incident that occurred on August 14, 2007. Defendants argue that the statute of limitations bars the claim.  Waller responds that his amendment "relates back" to June 9, 2009, the date of his original pleading.

A suit brought under section 1983 is subject to the general statute of limitations governing personal injuries in the forum state.  *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).  In Texas, the relevant limitations period is two years.  *Id.*; *see* Tex. Civ. Prac. & Rem. Code § 16.003(a).  Federal law, however, governs accrual of a section1983 claim.  *Id.*  "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."  *Id.* (quoting *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992)).  "A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim."  *Id.* (citing *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983)).

Here, the limitations period began to run on Waller's unlawful search claim on August 14, 2007, when the alleged incident occurred.  He amended his complaint to include an

unlawful search claim more than two years later. Thus, the statute of limitations bars Waller's claim unless it relates back to the date he filed his original complaint.

Under Rule 15(c) of the Federal Rules of Civil Procedure, an amended pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." FED. R. CIV. P. 15(c)(1)(B); *see Sanders-Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010). In other words, "[i]f a plaintiff attempts to interject entirely different conduct or different transactions or occurrences into a case, then relation back is not allowed." *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994). Conversely, "if a plaintiff seeks to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in the prior complaint, then relation back is allowed." *Id.* at 1386.

Waller's unlawful search claim does not arise out of the conduct, transaction, or occurrence at issue in his original complaint. In his original complaint, Waller pled facts that related exclusively to his arrest and Waller's use of force on June 10, 2007. *See* Compl. at 2-6. In his amended complaint, on the other hand, Waller added a series of facts relevant to Proctor's allegedly unlawful search of his home in the early morning of August 14, 2007.

> Federal Rule of Civil Procedure 15(c) provides that, in certain circumstances, amendments to pleadings relate back to the date of the original pleading. One of those circumstances is when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FED. R. CIV. P. 15(c)(2). Thus, the focus is "not . . . the caption given a particular cause of action, but . . . the underlying facts upon which the cause of action is based." *Watkins v. Lujan*, 922 F.2d 261, 265 (5th Cir.1991). "The purpose of the rule

ORDER – PAGE 14

> is accomplished if the initial complaint gives the defendant fair notice that
> litigation is arising out of a specific factual situation." *Longbottom v. Swaby*,
> 397 F.2d 45, 48 (5th Cir.1968).

*Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 342 (5th Cir. 2005).  Here the initial complaint did not give Defendants fair notice of litigation arising out of the events on August 14, 2007.  The underlying facts in the original complaint dealt with June 10, 2007.  Waller's tenuous "but for" connection between the two events is not sufficient for the claims arising out of the August 14 facts to relate back to the original complaint regarding the June 10 facts.  Thus, the statute of limitations bars Waller's unlawful search claim.

### E. Waller's Official Capacity Claims Against the Individual Defendants are Redundant

Waller asserts section 1983 claims against the City of Cleburne and the individual defendants in both their official *and* individual capacities.  However, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).  Because the Court must treat all claims that Waller asserts against the individual defendants in their official capacities as claims against the City, Waller's official-capacity claims are redundant.  *See Cooper v. Dallas Police Ass'n*, 261 F. App'x 735, 735 (5th Cir. 2008) ("We also agree with the district court that Cooper's claim against White, who was sued only in his official capacity, is redundant." (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir.1999))); *K.T. v. Natalia Indep. Sch. Dist.*, 2010 WL 1484709 (W.D. Tex. 2010) ("The Court will dismiss the official capacity

claims against Superintendent Moczygemba and Board President Alvarado in their official capacities because the section 1983 claims against them are redundant of the section 1983 claim against the District."). Accordingly, the Court dismisses all of Waller's official-capacity claims against the individual defendants.

### F. Section 101.106 of the Texas Tort Claims Act Bars Waller's State Law Claims Against the Individual Defendants

Waller also asserts state law negligence claims against both the City of Cleburne and the individual Defendants under the Texas Tort Claims Act ("TTCA"). However, "a plaintiff who sues under the TTCA must elect pursuant to § 101.106 of that act between suing a governmental unit and suing an employee of that unit." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 462 (5th Cir. 2010) (citing TEX. CIV. PRAC. & REM. CODE § 101.106). "If the plaintiff sues both the governmental unit and any of its employees under the TTCA, 'the employees shall immediately be dismissed on the filing of a motion by the governmental unit.'" *Id.* According to the Texas Supreme Court, the Texas legislature intended the provision "to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008).[5]

---

[5]The provision applies to both intentional and nonintentional tort claims. *See Mission Consol.*, 253 S.W. at 658-59; *Bustos*, 599 F.3d at 463.

ORDER – PAGE 16

Here, Waller sued both the City and the individual defendants under the TTCA. The City moves to dismiss Waller's state law claims against its employees. The Court grants the motion pursuant to section 101.106(e) of the Texas Civil Practice and Remedies Code.[6]

### G. Sovereign Immunity Bars Waller's State Law Claims Against the City of Cleburne

Waller's state law negligence claim against the City is based on the allegation that Defendants "excessively, violently and negligently slamm[ed] Plaintiff, while handcuffed, into a chair causing severe injury to his back." Compl. at 9. The City asserts that sovereign immunity bars Waller's claim.

In general, a Texas governmental unit is immune from tort liability. *Forgan v. Howard County*, 494 F.3d 518, 522 (5th Cir. 2007). However, the TTCA "creates a limited waiver of sovereign immunity." *Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009) (citing *Johnson v. Waters*, 317 F. Supp.2d 726, 738 (E.D. Tex. 2004)). Under section 101.021, "[a] governmental unit in the state is liable for: . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2). "In evaluating a claim under the TTCA, the threshold question is whether the government's actions constituted a condition or use of personal property." *Anderson v. Dallas County, Texas*, 286 F. App'x 850, 863 (5th Cir. 2008) (citing *Forgan*, 494 F.3d at 520).

---

[6]Waller fails to respond to this point.

ORDER – PAGE 17

The TTCA's waiver of sovereign immunity does not extend to intentional torts.  *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2); *Harris County v. Cypress Forest Public Utility Dist. of Harris County*, 50 S.W.3d 551, 553 (Tex. App. – Houston [14th Dist.] 2001, no pet.). And, a Plaintiff cannot "circumvent the intentional tort exception by couching his claims in terms of negligence."  *Harris County, Tex. v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App. – Houston [1st Dist.] 2005, no pet.).

Here, although Waller couches his claim as one for negligent "use" of handcuffs, it is grounded in Proctor's allegedly intentional use of force.  Confronted with similar facts, the Western District stated:

> Although handcuffs are tangible personal property, the essence of plaintiffs' claims is assault or excessive use of force.  Plaintiffs' pleadings, even when construed in their favor, suggest the deputies' actions were deliberate and intentional, not merely negligent.  Section 101.057 of the Texas Civil Practice and Remedies Code, excepts from the TTCA all claims "arising out of assault, battery, false imprisonment, or any other intentional tort."  The Fifth Circuit has said, "This provision shields municipalities from suits arising out of intentional torts committed by governmental employees and should be liberally construed to accomplish this objective."  If the essence of the claim under the TTCA "arises from an intentional tort, allegations of negligence are insufficient to avoid" the exception to liability.
>
> In sum, assuming the events occurred as plaintiffs contend and plaintiffs could show they each sustained injuries, their allegations are for injuries resulting from assault or excessive use of force rather than from negligence.  Therefore, Bexar County's sovereign immunity has not been waived by the TTCA and summary judgment is proper.

*Meck v. Ctr. for Health Care Svcs.*, 2006 WL 2128906, at *10 (W.D. Tex. 2006) (internal citations and footnotes omitted).  For the same reasons expressed in *Meck*, the Court holds that Waller's claim arises from an intentional tort and, therefore, sovereign immunity shields

the City from suit.  Accordingly, the Court dismisses Waller's state law claims against the City.[7]

### IV. THE COURT GRANTS SUMMARY JUDGMENT IN FAVOR OF PROCTOR AND THE CITY

#### A. Qualified Immunity Bars Waller's Section 1983 Claims Against Proctor

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'"  *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  To this end, the Fifth Circuit requires the plaintiff to meet a heightened pleading standard in order to avoid dismissal in cases where a government official invokes qualified immunity.  *See Schultea v. Wood*, 47 F.3d 1427, 1432–33 (5th Cir. 1995) (en banc).  Accordingly, once a government official raises qualified immunity as a defense, the plaintiff bears the burden of pleading specific facts demonstrating that the defendant cannot sustain the defense.  *Id.* at 1433.

_____

[7]The Court dismisses Waller's state law claims against the City for lack of subject matter jurisdiction.  *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009) ("[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction."); *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) ("[Sovereign] immunity deprives federal courts of subject matter jurisdiction.") (citing *Chapa v. Dep't of Justice*, 339 F.3d 388, 389 (5th Cir. 2003))).

In assessing a defendant's assertion of qualified immunity, reviewing courts typically engage in the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson*, 129 S. Ct. at 818. Under the first prong, a court determines whether the facts alleged, viewed in the light most favorable to the plaintiff, are sufficient to show that the defendant violated the plaintiff's constitutional rights. *Id.* at 201–02. Under the second prong, a court considers whether the constitutional right was clearly established, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 129 S. Ct. at 818.

The source of the factual record for the first prong of the *Saucier* analysis differs depending on whether the relevant motion seeks dismissal or summary judgment. In the context of a motion to dismiss, courts look to the defendant's conduct as alleged in the complaint. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). In addressing a motion for summary judgment, on the other hand, courts "no longer [permit the plaintiff] to rest on the pleadings" and, instead, consider the evidence in the record in the light most favorable to the plaintiff. *Id.* In either case, the Plaintiff bears the burden to demonstrate that the qualified immunity defense does not apply. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon*, 305 F.3d at 323.

Here, Defendants move to dismiss or, in the alternative, for summary judgment because qualified immunity bars Waller's section 1983 claims for unlawful arrest, excessive force, and denial of medical treatment. Because the Court looks beyond the face of the pleadings to the record to evaluate the parties' arguments, it performs a summary judgment analysis. The Court considers each of Waller's claims in turn.

*1. Unlawful Arrest.* – Waller alleges that Proctor subjected him to an unlawful arrest in violation of his Fourth Amendment right against unreasonable seizure. In order to establish a constitutional violation, Waller must demonstrate a genuine issue of material fact that Proctor lacked reasonable suspicion at the time of the initial traffic stop and lacked probable cause at the time of Waller's arrest. *See Ibarra v. Harris County*, 243 F. App'x 830, 833-34 (5th Cir. 2007) ("The law is clearly established that a detention is objectively unreasonable if the police officers lack[] reasonable suspicion to believe that the person is engaged in criminal activity, and that a warrantless arrest is objectively unreasonable if the officer lacks probable cause." (citations omitted)). The Court turns first to whether Proctor had reasonable suspicion to initiate the traffic stop.

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle."[8] *United States v. Banuelos-Romero*, 597

---

[8]In the course of a valid traffic stop, "an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation." *Id.* (citing *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993)). However, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* (citing *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004)). If

F.3d 763, 766 (5th Cir. 2010) (citing *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)). "Although 'reasonable suspicion' need not rise to the level of probable cause, a 'mere hunch' is insufficient." *United States v. Jackson*, 328 F. App'x 933, 935 (5th Cir. 2009) (citing *United States v. Zavala*, 541 F.3d 562, 574 (5th Cir. 2008)). An officer has reasonable suspicion when he "can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.* at 767 (citing *Lopez-Moreno*, 420 F.3d at 430). Courts examine the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id.*

A tip from an informant may be sufficient to support reasonable suspicion. *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007). In evaluating an informant's tip, Courts look to various factors, including:

> the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.

*Id.* (citing *United States v. Gonzales*, 190 F.3d 668, 672 (5th Cir. 1999)). "No single factor is dispositive and '[a] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" *Jackson*, 328 F. App'x at 935 (quoting *United States v. Jackson*, 818 F.2d 345,

---

"additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Lopez-Moreno*, 420 F.3d at 431.

348 (5th Cir. 1987)).  Although the Supreme Court "views anonymous informants with 'strong distrust,'" a known informant is different "because her 'reputation can be assessed' and she may be 'held responsible' if her information is fabricated."  *Id.* (quoting *Martinez*, 486 F.3d at 862-63).[9]

Here, Proctor initiated a traffic stop after speaking with Waller's wife, who identified herself and indicated that Waller was intoxicated and "driving around" the City.[10]  *See* Defs.' App. at 6.  She offered Proctor specific, verifiable information regarding Waller's location and vehicle.  Proctor acted on the tip shortly after he received it; it had not gone stale.  Thus, all of the above-listed factors weigh in favor of the tip's reliability.  The Court holds that the

_____

[9]It is not clear that an anonymous tip requires independent corroboration in the context of drunk driving.  In a recent dissent from a denial of certiorari, Justice Roberts stated: "I am not sure that the Fourth Amendment requires such independent corroboration before the police can act, at least in the special context of anonymous tips reporting drunk driving." *Virginia v. Harris*, 130 S. Ct. 10, 10 (2009).  He noted sharp disagreement on this issue among federal and state courts and emphasized the danger inherent in a wait-and-see approach.  "The effect of [a rule requiring independent corroboration] will be to grant drunk drivers 'one free swerve' before they can legally be pulled over by police.  It will be difficult for an officer to explain to the family of a motorist killed by that swerve that the police had a tip that the driver of the other car was drunk, but that they were powerless to pull him over, even for a quick check." *Id.*

[10]According to Proctor, Waller also failed to use a turn signal when he exited the local restaurant parking lot and entered the roadway. *Id.*  However, the Texas Transportation code does not require an operator to use a turn signal when a vehicle is operated in a privately maintained place, such as a parking lot. *See State v. Ballman*, 157 S.W.3d 65, 79 (Tex. App. – Fort Worth 2004, pet. ref'd); TEX. TRANSP. CODE ANN. §§ 542.001, 545.104, 541.302(5).  "If the supposed traffic violation that formed the basis for a stop was not a violation of state law, there is no objective basis for justifying the stop." *United States v. Branch*, 365 F. App'x 609, 611 (5th Cir. 2010) (citing *United States v. Miller*, 146 F.3d 274, 279 (5th Cir.1998)).  Thus, Proctor cannot rely on Waller's alleged failure to signal to establish reasonable suspicion.

information Proctor received from Waller's wife was sufficient to support Proctor's reasonable suspicion that Waller was driving while intoxicated.  Accordingly, Proctor is entitled to summary judgment with respect to the traffic stop because Waller fails to demonstrate a genuine issue of material fact that Proctor violated his constitutional rights.[11]

Second, the Court considers whether Proctor had probable cause to arrest Waller.  "A warrantless arrest must be based on 'probable cause.'" *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000).  "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008) (quoting *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006)).  Under Texas law, a motorist commits the offense of driving while

---

[11]Because Plaintiffs cannot establish a constitutional violation, the Court need not proceed to the second prong of the qualified immunity analysis.  See *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007).  However, the Court notes that even if it were to presume that the seizure was unreasonable and proceed to *Saucier*'s second prong, Proctor would still be entitled to summary judgment.

Under the second prong of the *Saucier* analysis, the court considers whether the constitutional right was clearly established, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pasco v. Knoblauch*, 566 F.3d 572, 581–82 (5th Cir. 2009) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  This reflects the understanding that "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205.  The doctrine shields officers' decisions made in the context of fast-paced, tense and difficult circumstances.  Here, it would not be clear to a reasonable officer that Proctor lacked reasonable suspicion in the situation that he confronted.  Thus, summary judgment is also appropriate under the second prong.

ORDER – PAGE 24

intoxicated ("DWI") when he or she operates a motor vehicle in a public place while intoxicated.  *See* TEX. PENAL CODE §§ 49.04(a).   The Penal Code defines intoxicated as:

> (A) not having the normal use of mental of physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
> (B) having an alcohol concentration of 0.08 or more.

TEX. PENAL CODE §§ 49.01(2).

Here, the uncontroverted video evidence demonstrates that Proctor had probable cause to arrest Waller.  Waller could not comply with Proctor's orders during the field sobriety tests.  *See* Ex. A to Pl.'s Mot. to Dismiss (in-car video recording) at 8:30-17:15.  Further, Waller admitted that he had consumed alcohol and indicated that he had equilibrium problems as he was taking the tests.  *See id*. at approximately 12:00.  Waller also stated, "you don't understand this stuff that I'm on" before his arrest.  *Id.* at approximately 12:35.  The Court holds that Proctor had probable cause to arrest Waller.  Accordingly, Proctor is entitled to summary judgment because Waller fails to demonstrate a genuine issue of material fact that Proctor violated his constitutional rights when he conducted the arrest.[12]

***2. Excessive Force.* –** Waller contends that Proctor used excessive force in violation of his Fourth Amendment right against unreasonable seizure.  However, Defendants argue that the Court should analyze Waller's excessive force claim under the heightened standard

---

[12]Again, the Court need not proceed to the second prong of the *Saucier* analysis. However, the Court notes that even if it were to presume that the seizure was unreasonable and proceed to *Saucier*'s second prong, Proctor would still be entitled to summary judgment because it would not be clear to a reasonable officer in Proctor's shoes that the arrest was without probable cause.

that applies to pretrial detainees under the Fourteenth Amendment, rather than the standard that applies to arrestees under the Fourth Amendment. The Court disagrees.

"Although the point at which an arrest ends and pretrial detainment begins is not always clear, we have held that the Fifth or Fourteenth Amendments begin to protect persons '*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time.'" *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1445 (5th Cir. 1993)) (internal citation omitted) (emphasis in original). Here, even if Proctor had completed the incidents of arrest, he did not release Waller from his custody or place Waller in jail before the alleged use of force occurred. Thus, the Court holds that the Fourteenth Amendment does not govern his excessive force claim. *See Ratliff v. City of Houston*, 2008 WL 910205, at *2 (S.D. Tex. 2008) (noting that "courts in this Circuit have indicated that the point at which Constitutional protections for detainees shift from the Fourth Amendment to the Due Process Clause of the Fifth or Fourteenth Amendment is the point at which an individual is placed into secure custody in a jail cell."); *Ling v. City of Garland*, 2006 WL 1816434, at *3 (N.D. Tex. 2006) (holding that a plaintiff who was still in the arresting officer's custody at the time of an alleged use of excessive force was not a pretrial detainee).

Accordingly, the Court evaluates Waller's claim under the Fourth Amendment excessive force standard that applies to arrestees. In order to demonstrate excessive force in violation of his Fourth Amendment rights, a Plaintiff must establish: "(1) injury, (2) which

resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009) (citing *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)).

Viewing the facts in the light most favorable to the plaintiff, there is no genuine issue of material fact that Proctor violated a clearly established constitutional right. First, Waller offers no evidence other than the conclusions in his own affidavit to support the existence[13] and causation of his injury.[14]  *See* Pl.'s App. at 4 [43].  Without any competent medical evidence, Waller cannot demonstrate the first two elements of his excessive force claim.

Second, Waller cannot show that Proctor's use of force was objectively unreasonable under the Fourth Amendment.[15]  Once the Court determines the facts in the light most

---

[13]Although Waller does not include it in his appendix, Defendants provided evidence that a physician examined Waller's alleged injury on the night of the incident. An emergency room doctor advised Waller to take over-the-counter pain medication (ibuprofen and acetaminophen) for his back pain and to consult his general physician in one to two days. Defs.' App. at 37-39 [39-3]. The information sheet issued to Waller at the hospital provides no detail regarding the injury's causation, severity, or duration. *Id.*

[14]Waller alleges that he has experienced severe back problems, "including two herniated discs that require surgery," since the incident.  *See* Pl.'s App. at 4 [43]. Defendants object to Waller's self-diagnosis because it is a medical conclusion that Waller is not qualified to provide.  *See* Defs.' Reply at 10 [45].  The Court agrees and sustains the objection.  *See Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006) (citing *Ragas v. Koch Gateway Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (explaining that unsubstantiated assertions are not competent summary judgment evidence sufficient to defeat a properly supported motion))).

[15]Claims of excessive force under the Fourth Amendment complicate the *Saucier* inquiry, as the Court must make two "overlapping objective reasonableness inquir[ies]." *Saucier*, 533 U.S. at 210 (Ginsburg, J., concurring in the judgment); *see Lytle*, 560 F.3d 404, 410 (2009).  First, the Court must consider the constitutional violation, utilizing the Fourth Amendment's reasonableness test.  If the officer's conduct was not objectively reasonable under the Fourth Amendment, the Court must answer the second prong of the *Saucier*

favorable to the nonmoving party, to the extent supportable by the record, "the reasonableness of [an officer's] actions . . . is a pure question of law." *Scott v Harris*, 550 U.S. 372, 380 n.6 (2007).  Courts determine reasonableness by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citing *United States v. Place*, 462 U.S. 696, 703 (1983)).  This balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009).  Further, the reasonableness inquiry must consider that officers often must make "split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.  Thus, Courts determine whether the force was excessive "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Peterson v. City of Fort Worth*, 588 F.3d 838, 846 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396 (1989)).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396.

---

analysis, determining whether the law was clear enough for a reasonable officer to know that his conduct violated the Constitution.  While these inquiries are similar in nature, they are distinct questions.  *Lytle*, 560 F.3d at 410.

ORDER – PAGE 28

Judging "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," Proctor's use of force was not clearly unreasonable. A reasonable officer in Proctor's position could have perceived Waller to be intoxicated and disorderly.[16] Before Proctor came into contact with Waller, he learned from Waller's wife that Waller was "highly intoxicated" and driving around in the City of Cleburne and that she feared Waller would "come home drunk and cause another disturbance." Am. Compl. at 5. Then, during the traffic stop, Waller confirmed that he had consumed alcohol and medication that evening. He failed to perform the required tasks during the field sobriety tests. When Proctor pulled Waller's license plate number, he saw a caution to peace officer warning.[17] Further, after Proctor arrested Waller and brought him to the hospital for a blood test, he directed Waller to sit down and remain seated in the hospital waiting room. Waller admits

---

[16]"The court must measure the force used under the facts as a reasonable officer would perceive them, not necessarily against the historical facts. For that reason, when reviewing a grant of summary judgment in the Fourth Amendment context, after first construing disputed historical facts in favor of the non-movant, the court must then ask how a reasonable officer would have perceived those historical facts." *Hill v. Carroll County, Miss.*, 587 F.3d 230, 235 (5th Cir. 2009) (citing *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991)) (internal citation omitted).

[17]Although Waller argues that there is a genuine fact issue as to whether he had a caution to peace officer warning on his license, he admitted at his deposition that he assaulted a police officer in an unrelated incident and that there is a notice reflecting the assault on his license plate. *See* Defs.' App. to Supp. Reply at 4 [47-3]. In establishing a genuine issue of material fact, the nonmovant may not rely on "naked assertions of an actual dispute" but instead "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *In re Lewisville Props., Inc.*, 849 F.2d 946, 950 (5th Cir. 1988) (citing *Anderson*, 477 U.S. at 255–56).

ORDER – PAGE 29

that he did not comply.[18]  With all of this in mind, the Court holds that a reasonable officer confronted with the same or similar circumstances could have "knocked" Waller back into his seat.  Accordingly, the Court grants summary judgment in Proctor's favor  on Waller's excessive force claim because Proctor is entitled to qualified immunity.[19]

   *3. Denial of Medical Treatment. –* Waller alleges that Proctor denied him adequate medical care while he was in police custody.   This claim sounds in the Fourteenth Amendment.  *Hill*, 587 F.3d at 237 ("After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pre-trial detainee, derives from the Fourteenth Amendment." (quoting *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 473 (5th Cir. 1996))).  Under the due process clause of the Fourteenth Amendment, a detained individual has a constitutional right not to have his "serious medical needs met with deliberate indifference on the part of the confining individuals." *United States v. Gonzales*, 436 F.3d 560, 573 (5th

---

[18]Waller acknowledges that Proctor instructed him to remain still while he was at the hospital awaiting a blood draw and admits that he failed to comply with Proctor's order. Specifically, he indicates that he "couldn't help moving around in the chair" due to his poison ivy condition and that he eventually stood up from the chair and attempted to scratch his ankles. *See* Pl.'s App. at 3.  He alleges that, after he stood up, Proctor "knocked" him down into a chair.  *Id.*

[19]Because Plaintiffs cannot establish a constitutional violation, the Court need not proceed to the second prong of the qualified immunity analysis.  See *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007).  However, the Court notes – as it did in the context of Waller's unlawful arrest claim – that even if it were to presume that the seizure was unreasonable and proceed to Saucier's second prong, Proctor would still be entitled to summary judgment.  As above, the Court holds that it would not be clear to a reasonable officer that Proctor's conduct was unlawful in the situation that he confronted.  Thus, summary judgment is appropriate.

Cir. 2006).   Mere delay in medical treatment is insufficient to create liability unless it resulted in substantial harm.  *See Bennett v. La. ex rel. Dep't of Pub. Safety & Corrections*, 2009 WL 102080, at *4 (5th Cir. 2009); *Davis v. Kuykendall*, 242 F. App'x 961, 962-63 (5th Cir. 2007); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  It requires both that the "government official have 'subjective knowledge of a substantial risk of serious harm to a pretrial detainee' and that the government official respond with 'deliberate indifference to that risk.'"  *Gonzales*, 436 F.3d at 573 (quoting *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc).  A plaintiff "must raise a fact issue as to whether confining officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  *Cooper v. Johnson*, 353 F. App'x 965, 968 (5th Cir. 2009) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

The basis of Waller's denial of medical treatment claim is that Proctor pushed and injured him and that, instead of obtaining treatment for him immediately, Proctor took him back to the police station and called for an ambulance.  Waller fails to demonstrate a genuine issue of material fact both that he had a serious medical need and that Proctor responded with deliberate indifference to that need.

First, as the Court discussed above, Waller offers no evidence other than the conclusions in his own affidavit to demonstrate the existence or severity of his medical need.

*See* Pl.'s App. at 4.  The only competent medical evidence in the record that supports Waller's claim is a patient instruction sheet issued to Waller by Harris Methodist Wallis Regional Hospital.  According to the instruction sheet, an emergency room doctor diagnosed Waller with sciatica, "a condition most often seen in patients with disk disease of the lower back."  Defs.' App. at 37.  The physician advised Waller to take over-the-counter pain medication (ibuprofen and acetaminophen) for his back pain and to consult his general physician in one to two days.  *Id.* at 39.  The information sheet provides no detail regarding the injury's causation, severity, or duration.  *Id.*  Thus, Waller fails to create a genuine issue of material fact that his medical need was serious.  *See Lusk v. Dallas County Sheriff's Department*, 2002 WL 31757706, at *4-5 (N.D. Tex. 2002) (holding that pain from a herniated disc and degenerative spinal condition did not constitute a serious medical need that required immediate medical attention).[20]  Further, even if Waller's medical need was serious, Waller provides no evidence that the alleged delay in treatment – at a maximum, four hours from the time of alleged injury – caused him substantial harm.

Second, Waller fails to submit any evidence show that Proctor "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *See Cooper*, 353 F. App'x at 968.  To the contrary, Waller admitted in his deposition testimony

---

[20]While Waller must demonstrate a serious medical need, "a finding of bodily injury is not required to establish deliberate indifference." *United States v. Gonzales*, 436 F.3d 560, 575 (5th Cir. 2006).

ORDER – PAGE 32

that Proctor called for an ambulance to pick him up "pretty quick" after they arrived at the

police station:[21]

> Q:    How long is the ride from the hospital back to the police station?
> A:    10, 15 minutes.
> Q:    Did you say anything to Mr. Proctor during that time?
> A:    Nope.
> Q:    Mr. Proctor say anything to you during that time?
> A:    Nope, not to the best of my recollection.
> . . .
> Q:    Got to the police station. What happened?
> A:    Soon as he opened the door, I fell out on the ground, told him to call
>        911, get me an ambulance, I need to go to the hospital, my back is
>        killing me.  Because there were like six or seven cops standing at the
>        door waiting on me.
> Q:    Is that the first thing you said to Mr. Proctor since you left the hospital?
> A:    I believe so.
> Q:    What was his response, if anything?
> A:    I think he got on the radio and called for an ambulance.
> Q:    Did he do that very quickly?
> A:    I believe it was pretty quick.
> Q:    What's the next thing you recall happening?
> A:    Getting in the ambulance.

Defs.' App. in Supp. of Reply at 16-17.  There is no genuine issue of material fact that

Proctor acted with deliberate indifference to Waller's medical need, serious or not.  Because

Waller fails to demonstrate a constitutional violation by Proctor, Proctor is entitled to

qualified immunity on Waller's denial of medical treatment claim.

---

[21]Waller alleges that he complained of back pain to both Proctor and a nurse
immediately after the alleged injury occurred.  It appears from Waller's deposition testimony
that medical personnel at the emergency room took an x-ray of his back *before* Proctor
brought him from the hospital to the police station.  *See* Defs.' App. in Supp. of Reply at 16-
17.

ORDER – PAGE 33

### B. Waller's Section 1983 Claims Against the City Fail

Waller seeks to hold the City liable for the alleged constitutional violations of the individual defendants.  However, "[i]t is well established that a city is not liable under § 1983 on the theory of respondeat superior." *Valle v. City of Houston*, 2010 WL 2977456, at *3 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Rather, a municipality is liable "only for acts directly attributable to it 'through some official action or imprimatur.'" *Id.* (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

In order to establish municipal liability under section 1983, a plaintiff must show "the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Id.* (citing *Monell*, 436 U.S. at 691).  Thus, a plaintiff must demonstrate: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

Here, as the Court discussed at length, Waller fails to demonstrate a genuine issue of material fact that the individual defendants deprived him of a federally protected right. *See* Section IV(A).  Thus, absent any underlying constitutional violation, Waller has no claim against the City.[22]  Accordingly, the Court grants summary judgment in favor of the City.

---

[22]Moreover, Waller fails to identify any policy or custom that was the "moving force" behind the alleged constitutional violations.  In order to prove moving force causation, "a plaintiff must show that the municipal action was taken with the requisite degree of

CONCLUSION

The Court grants the Defendants' motion for the reasons provided above. In summary the Court dismisses: (1) all of Waller's claims against Wickson, Arriola, and Duddington without prejudice; (2) dismisses Waller's individual capacity claims against Glover, and Powell; (3) dismisses Waller's individual capacity claims against Thompson; (4) dismisses Waller's unlawful search claim against all defendants; (5) dismisses Waller's official capacity claims against all of the individual defendants; (6) dismisses Waller's state law claims against all of the individual defendants; and (7) dismisses Waller's state law claims against the City of Cleburne because sovereign immunity shields it from suit. In addition, the Court grants summary judgment that (1) qualified immunity shields Proctor from Waller's section 1983 claims; and (2) Waller's section 1983 claims against the City fail because he cannot demonstrate an underlying constitutional violation.


Signed September 22, 2010.


David C. Godbey
United States District Judge

---

culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397 (1997). That is, "the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id*. at 411. Although Waller cites various deficiencies in the Cleburne Police Department, he does not provide any evidence to show that the City acted with deliberate indifference.